**Appeal No. 24-2460**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

JOSEPH MCGHEE,

Plaintiff-Appellant,

v.

STATE OF ARIZONA, et al.,

Defendants-Appellees.

On Appeal from the United States District Court
for the District of Arizona
Case. No. 3:23-cv-08601-SRB
District of Arizona, Prescott

_____

**DEFENDANTS-APPELLEES FORSMAN, RING, BARKER, AND
COCONINO COUNTY'S ANSWERING BRIEF**

_____

James M. Jellison, Bar No. 012763
JELLISON LAW OFFICES, PLLC
18801 North Thompson Peak Parkway
Suite D235
Scottsdale, Arizona 85255
Telephone: 480.659.4233
Email: jim@jellisonlaw.com
*Attorney for Defendants-Appellees
Forsman, Ring, Barker, and Coconino
County*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ............................................................................... 1

ISSUES PRESENTED......................................................................... 4

JURISDICTION.................................................................................. 5

STATEMENT OF THE CASE .............................................................. 6

    I.    NATURE OF THE CASE.................................................... 6

    II.   COURSE OF THE PROCEEDINGS AND DISPOSITION IN THE DISTRICT COURT ............................................................ 7

    III.  STATEMENT OF FACTS.................................................. 12

STANDARD OF REVIEW .................................................................. 15

ARGUMENT ..................................................................................... 17

    I.  THE DISTRICT COURT CORRECTLY APPLIED *HECK V. HUMPHREY* TO DISMISS COUNTS VIII-X and XII OF MCGHEE'S AMENDED COMPLAINT ...................................... 17

    II.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING LEAVE TO AMEND BASED ON THE APPLICATION OF ABSENTION........................................................................ 21

    III. BECAUSE THE DISTRICT COURT DID NOT RELY ON QUALIFIED IMMUNITY, THERE IS NO ERROR FOR THIS COURT TO CORRECT...................................................... 23

    IV.  THIS COURT IS BOUND BY U.S. SUPREME COURT PRECEDENT TO RECOGNIZE QUALIFIED IMMUNITY ......................... 25

i

V. MCGHEE'S FOUNDATIONAL ATTACK ON QUALIFIED IMMUNITY IS NOT SUPPORTED BY THE LIMITED RECORD DEVELOPED IN THIS CASE ....................................................28

VI. EVEN IF THE ORIGINAL VERSION OF § 1983 CONTAINED THE LANGUAGE SUGGESTED BY MCGHEE, IT DOES NOT PRECLUDE THE U.S. SUPREME COURT FROM RECOGNIZING IMMUNITIES BASED ON POLICY CONSIDERATIONS ................................................31

CONCLUSION ........................................................................35

STATEMENT OF RELATED CASES ....................................36

RULE 32 CERTIFICATE OF COMPLIANCE .......................37

CERTIFICATE OF FILING AND SERVICE .......................38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Adickes v. S.H. Kress & Co.*
  398 U.S. 144 (1970)......................................................................32

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009)......................................................................15

*Atwater v. City of Lago Vista*
  532 U.S. 318 (2001) .....................................................................34

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) .....................................................................15

*Brown v. Baden*
  815 F.2d 575 (9th Cir. 1987) .......................................................26

*Chappel v. Lab. Corp. of Am.*
  232 F.3d 719 (9th Cir. 2000) .......................................................22

*Chillemi v. Town of Southampton*
  943 F. Supp. 2d 365 (E.D.N.Y. 2013) .........................................19

*City of Escondido v. Emmons*
  586 U.S. 38 (2019) .......................................................................26

*Cousins v. Lockyer*
  568 F.3d 1063 (9th Cir. 2009) .....................................................15

*Cunningham v. Gates*
  312 F.3d 1148 (9th Cir. 2002) .....................................................20

*Edwards v. Balisok*
  520 U.S. 641 (1997) .....................................................................17

iii

*Faulkner v. ADT Sec. Serv. Inc.*
    706 F.3d 1017 (9th Cir. 2013) ............................................................5

*Filarsky v. Delia*
    566 U.S. 377 (2012) ......................................................................32

*Foman v. Davis*
    371 U.S. 178 (1962) ......................................................................21

*Gabrielson v. Montgomery Ward & Co.*
    785 F.2d 762 (9th Cir. 1986) ...........................................................16

*Garmon v. Cty. of Los Angeles*
    828 F.3d 837 (9th Cir. 2016) ...........................................................21

*Green v. Thomas*
    WL 2269133 (S.D. Miss. May 20, 2024) ...........................................28

*Harlow v. Fitzgerald*
    457 U.S. 800 (1982) ...................................................... 25, 33, 34, 35

*Heck v. Humphrey*
    512 U.S. 477 (1994) ......................................................... 17, 18, 19

*Hormel v. Helvering*
    312 U.S. 552 (1941) ......................................................................24

*Howey v. United States*
    481 F.2d 1187 (9th Cir. 1973) ..........................................................16

*Hutto v. Davis*
    454 U.S. 370 (1982) ......................................................................26

*Jimmerson v. Lewis*
    94 F.4th 423 (5th Cir. 2024) ...........................................................28

*Kimble v. Marvel Entertainment, LLC*
    576 U.S. 446 (2015).......................................................................27

iv

*Kisela v. Hughes*
    584 U.S. 100 (2018) ........................................................26

*Loehr v. Ventura County Community College District*
    743 F.2d 1310 (9th Cir.1984) ......................................16

*Loper Bright Enterprises v. Raimondo*
    144 S. Ct. 2244 (2024) ...............................................27

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
    519 F.3d 1025 (9th Cir. 2008) ....................................15

*McQuillion v. Schwarzenegger*
    369 F.3d 1091 (9th Cir. 2004) ....................................17

*Mitchell v. Forsyth*
    472 U.S. 511 (1985) ....................................................25

*Moss v. U.S. Secret Serv.*
    572 F.3d 962 (9th Cir. 2009) ......................................15

*Oklahoma City v. Tuttle*
    471 U.S. 808 (1985) ....................................................32

*Payne v. Tennessee*
    501 U.S. 808 (1991)....................................................27

*Pearson v. Callahan*
    555 U.S. 223 (2009) ....................................................25

*Pierson v. Ray*
    386 U.S. 547 (1967) ....................................................33

*Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*
    946 F.3d 1100 (9th Cir. 2020) ....................................24

*Quinn v. Robinson*
    783 F.2d 776 (9th Cir. 1986) ......................................24

v

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*
  754 F.3d (9th Cir.2014) ........................................21

*Rivas-Villegas v. Cortesluna*
  595 U.S. 1 (2021) ......................................... 25, 26

*Roberts v. City of Fairbanks*
  2018 WL 5259453 at *6 (D. Alaska October 22, 2018) ...................................17

*Rogers v. Jarrett*
  63 F.4th 971 (5th Cir. 2023) ........................... 26, 27, 28

*S.B. v. Cnty. of San Diego*
  864 F.3d 1010 (9th Cir. 2017) ..........................25

*Salazar v. Brown*
  616 F. App'x 354 (9th Cir. 2015) .......................22

*Saucier v. Katz*
  533 U.S. 194 (2001) ......................................25

*Singleton v. Wulff*
  428 U.S. 106 (1976) ................................... 23, 24

*Smith v. City of Hemet*
  394 F.3d 689 (9th Cir. 2005) ...........................17

*Smithart v. Towery*
  79 F.3d 951 (9th Cir. 1996) ............................20

*Tolliver v. City of Chicago*
  820 F.3d 237 (7th Cir. 2016) ...........................17

*Trump v. U.S.*
  144 S.Ct. 2312 (2024) ...................................34

*Turner v. City of Memphis*
  369 U.S. 350 (1962).....................................24

vi

*U.S. v. Patrin*
    575 F.2d 708 (9th Cir. 1978) ...............................................................24

*U.S. v. Ritchie*
    342 F.3d 903 (9th Cir. 2003) ...............................................................8

*U.S. v. Smith*
    588 F.2d 727 (9th Cir. 1978) ...............................................................13

*Valerio v. Boise Cascade Corp.*
    80 F.R.D. 626 (N.D.Cal.1978) ...........................................................16

*Warshaw v. Xoma Corp.*
    74 F.3d 955 (9th Cir. 1996) ...............................................................15

*Youakim v. Miller*
    425 U.S. 231 (1976) ...........................................................................24

*Younger v. Harris*
    401 U.S. 37 (1971) ....................................................................... 21, 22

**Statutes:**

A.R.S. § 1-601
A.R.S. § 1-602
A.R.S. § 13-1302(A)(3)&(B)
A.R.S. § 13-1302(D)
A.R.S. § 13-2023(A)(1)
A.R.S. § 13-2921
A.R.S. § 2923

## INTRODUCTION

The matter comes before this Court upon the district court's grant of Defendants-Appellees Flagstaff Police Detective Ryan Forsman; Coconino County Attorney Bill Ring, in his official capacity only; Coconino Deputy County Attorney Ammon Barker, in his official capacity only; and Coconino County's Rule 12(b)(1)&(6) motion to dismiss, as well as the district court's denial of leave for Plaintiff Joseph McGhee ("McGhee" or "Appellant") to file a second amended complaint. For the reasons cited below, as to the grant of the motion to dismiss, the only remaining, interested Defendant-Appellee is Detective Ryan Forsman. As to the denial of leave to amend, all of the above Defendants-Appellees are interested parties. Of the twelve counts in McGhee's First Amended Complaint, the district court relied on Plaintiff's criminal conviction and the *Heck v. Humphrey* doctrine to dismiss Counts VIII, IX, X, and XII against Forsman. All of these Counts are constitutional claims requiring the absence of probable cause to survive, which, if successful, would necessarily imply the invalidity of McGhee's criminal convictions arising from Forsman's investigation, and McGhee's subsequent criminal prosecution.[1]

---

[1] Count XI was a *Monell* claim against Coconino County. (SER 1009-1112). The district court granted Coconino County's motion to dismiss because McGhee conceded his failure to state a *Monell* claim against the County. (SER 0022-0023). McGhee does not challenge dismissal of the County on Count XI. *See,* Opening Brief ("OB"). Counts I-VII were claims for declaratory relief with Counts I-V and

Notwithstanding the basis for the dismissal in favor of Detective Forsman, Appellant McGhee's Opening Brief posits an omnibus attack on qualified immunity; not only as to its application in this case, but as to qualified immunity's very foundation. *See,* OB, pgs. 1-12; pg. 13, Issues II, IV, and V; pgs. 20-22, 31-66. Indeed, of the 66 pages of text in the OB, 51 pages are devoted to the viability of qualified immunity. The problem with Appellant's qualified immunity argument is that the district court did not rely on qualified immunity, to any extent, in dismissing Appellant's First Amended Complaint. (Defendants-Appellees' Supplemental Excerpts of Record "SER" 0002-0025). As to qualified immunity, there is no underlying district court error for this Court to correct.

Instead, the district court correctly concluded that *Heck* mandated dismissal of remaining Counts VIII, XI, X, and XII because each of those constitutional claims relies on the absence of probable cause, and Plaintiff's existing criminal conviction supplies that probable cause. To this, Appellant devotes less than three pages of argument. *See,* OB, pgs. 29-31. Contrary to Appellant's argument, he pled guilty to a criminal charge of custodial interference, and a lesser-included criminal offense of attempted stalking, arising out of the underlying criminal investigation, the resulting

---

VII seemingly directed at the State of Arizona, and Count VI against Ring and Barker, in their official capacities. (SER 1092-1105). The district court severed and remanded Counts I-VII to the state court. (SER 0008-0020; 0025-0026). McGhee does not challenge the severance and remand of Counts I-VII. *See,* OB.

2

charges, and culminating in Appellant's conviction.   That conviction has not been reversed, expunged, or otherwise invalidated.

As for the denial of further leave to amend, the district court explained that due its abstention of claims related to ongoing criminal proceedings, and dismissal of all other claims, McGhee's pending Motion for Leave to File Second Amended Complaint and Supplemental Complaint was denied as moot.  (SER 0009-0017; 0024).

## ISSUES PRESENTED

1.      Whether the district court correctly applied *Heck v. Humphrey* to dismiss Counts VIII-X and XII of Appellant's Amended Complaint.

2.      Whether the district court abused its discretion in denying leave to amend based on the application of abstention.

3.      Whether there is any error for this Court to correct regarding qualified immunity where the district court did not rule on qualified immunity in dismissing Appellant's action.

4.      Whether this Court is bound by U.S. Supreme Court precedent to recognize qualified immunity.

5.      Whether Appellant's foundational attack on qualified immunity is supported by the limited record developed in this case.

6.      If the original version of § 1983 contained the language suggested by Appellant, whether that language precludes the U.S. Supreme Court from recognizing qualified immunity on policy considerations.

4

## JURISDICTION

This Court has jurisdiction to hear the appeal under 28 U.S.C. § 1291 because the judgment from which he appeals is a "final decision[] of the district court[.]" *Faulkner v. ADT Sec. Serv. Inc.,* 706 F.3d 1017, 1019 (9th Cir. 2013).

## STATEMENT OF THE CASE

### I.  NATURE OF THE CASE

Appellant McGhee's First Amended Complaint, Counts VIII – X and XII, alleges claims against Flagstaff Police Detective Ryan Forsman invoking the Fourth and Fourteenth Amendments to the U.S Constitution, along with a claim that an alleged violation of state statutory law is cognizable under 42 U.S.C. § 1983 if it results in a Fourth Amendment deprivation.    (SER 1105-1109; 1112-1113).    In Count VIII, McGhee brings a § 1983 claim against Forsman based on alleged false statements in an arrest warrant, and detention of McGhee without probable cause, both in violation of the Fourth Amendment.  (SER 1105-1107).  In Count IX, McGhee brings a § 1985 claim against Forsman and private party Dara Rabin based on an alleged conspiracy to falsely arrest, charge, and detain McGhee without probable cause.  (SER 1107-1108).  In Count X, McGhee brings a § 1983 claim against Forsman based on malicious prosecution, specifically alleging an absence of probable cause.  (SER 1108-1109).  Finally, in Count XII, McGhee brings a § 1983 claim against Forsman based on an alleged violation of Arizona's Parent's Bill of Rights, A.R.S. §§ 1-601, 1-602 which, in turn, resulted in an arrest without probable cause in violation of the Fourth Amendment, all for the purpose of interfering with a pending state law custody proceeding.  (SER 1112-1113).  McGhee sought declaratory and injunctive relief, as well as money damages, on these claims.   (SER 1113).

6

## II. COURSE OF THE PROCEEDINGS AND DISPOSITION IN THE DISTRICT COURT

On April 7, 2023, McGhee filed a Summons and Verified Complaint for Declaratory and Injunctive Relief against the State of Arizona. (SER 1052-1072).[2] On May 30, 2023, the State noticed its waiver of formal service. (SER 1074-1075).

On June 11, 2023, McGhee filed his First Amended Complaint for Damages and Equitable Relief against City of Flagstaff Detective Ryan Forsman (individually and officially); Dara Rabin; Coconino County Attorney William Ring (in his official capacity only); Coconino Deputy County Attorney Ammon Barker (in his official capacity only); Coconino County, and the State of Arizona. (SER 1076-1114).

On October 23, 2023, Ring, Barker and Coconino County were served with the Amended Complaint, and on November 7, 2023, Forsman was served with the Amended Complaint. (SER 0844-0848). On November 16, 2023, Forsman, Ring, Barker, and Coconino County removed this case to the U.S. District Court in Arizona. (*Id.*).

---

[2] McGhee's complaints were accompanied by lengthy memoranda and his petitions for post-conviction relief in his pending state law criminal proceedings. These are included in the Supplemental Excerpts of Records at McGhee's request and/or for completeness of the relevant state law record that was forwarded to the district court. *See,* SER 0849-0952; 0953-1051; 1115-1148.

7

On December 24, 2023, Defendants Forsman, Ring, Barker, and Coconino County filed their Motion to Dismiss raising, among other things, *Younger* abstention and the *Rooker-Feldman* doctrine based on McGhee's ongoing state criminal proceedings and judgment from conviction; absence of standing and mootness for declaratory and injunctive relief; application of *Heck v. Humphrey*; qualified immunity; and the failure to state a plausible *Monell* claim. (SER 0806-0843). Attached to the Motion were 1) McGhee's signed plea agreement in cases CR2021-00796 and CR2022-00203, for guilty pleas of criminal custodial interference, a class 6 felony in violation of A.R.S. § 13-1302(A)(3)&(B), and criminal attempted stalking, a class 1 misdemeanor in violation of A.R.S. § 13-2023(A)(1); and 2) the Arizona Superior Court Judgment of Conviction and Sentencing based on McGhee's pleas. (SER 0829-0837).[3]

On February 5, 2024, McGhee filed a Notice of Filing Exhibits to [sic] Response to Dismissal Motion Part 1 of 2 which included, among other things, the Flagstaff Incident/Investigation Report, State's Response to Defendant's Amended Petition for Post-Conviction Relief, Defendant's Petition for Post-Conviction Relief Under Rule 33, an October 21, 2022 Felony Complaint and Summons, McGhee's

---

[3] All attachments in the motion to dismiss phase were submitted under the authority contained in *U.S. v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003), and were not objected to by McGhee. (SER 0811).

Plea Agreement in criminal case Nos. CR2021-00796 and CR2022-00203, and McGhee's Amended Petition for Post-Conviction Relief. (SER 0645-0803). On that same day, McGhee filed a Notice of Filing Exhibits to [sic] Response to Dismissal Motion Part 2 of 2 which included, among other things, McGhee's state court Motion to File Amended Post-Conviction Relief, an August 29, 2023 discovery order in his criminal matter, his conditions of probation, and a supervening criminal indictment. (SER 0625-0644).[4]

On February 20, 2024, Defendants Forsman, Ring, Barker, and Coconino County filed their Reply in Support of Motion to Dismiss which included McGhee's Indictment and Complaint as to stalking and criminal custodial interference, respectively, and the court transcript of his guilty plea allocution. (SER 0571-0624).

On February 20, 2024, Plaintiff McGhee filed his Motion for Leave to File Amended and Supplemental Complaint, and attached draft [Verified] Second Amended Complaint. (SER 0433-0570). The draft Second Amended Complaint contained 23 separate counts, all arising from McGhee's underlying criminal case, and resulting conviction. (*Id.*). The State responded in opposition. (SER 0418-0427). On February 23, 2024, Defendants Forsman, Ring, Barker, and Coconino

---

[4] From the Defendants-Appellees' standpoint, these filings demonstrate the existence and nature of McGhee's criminal case pleas and conviction, and the ongoing nature of the state criminal proceedings.

9

County filed their Joinder in the State's Responses in Opposition to Plaintiff's Motion for Leave to File Amended and Supplemental Complaint and Plaintiff's Application for Temporary Restraining Order Without Notice and Order to Show Cause. (SER 0389-0417). Defendants Forsman, Ring, Barker, and Coconino County argued that the proposed Amended Complaint would be disallowed by *Younger* abstention and under the *Rooker-Feldman* doctrine and that, in any event, the facts supporting the Amended Complaint were subject to issues that had already been litigated adversely to McGhee in the ongoing state court proceedings. (*Id.*).

On February 29, 2024, the district court denied McGhee's Motion for Leave to File Amended and Supplemental Complaint as its 138 pages, 895 separate paragraphs, and 23 separate counts violated Fed.R.Civ.P. 8. (SER 0386-0388).

On or about March 14, 2024, McGhee filed a renewed Motion for Leave to File Second Amended and Supplemental Complaint, along with a draft of the 76-page, 300-paragraph, eleven count [Proposed] Second Amended and Supplemental Complaint. (SER 0179-0383).

On March 23, 2023, McGhee filed notice with the district court that he had filed a Petition for Review to the Arizona Court of Appeals in Case No. 1 CA-CR 24-0159 PRPC. (SER 0147-0178).

On March 27, 2024, the State filed its Response in Opposition to Plaintiff's Motion for Leave to File Second Amended and Supplemental Complaint. (SER

10

0138-0146).   On March 28, 2024, Defendants Forsman, Ring, Barker, and Coconino County filed their Response to Plaintiff's Motion for Leave to File Second Amended and Supplemental Complaint and Joinder in State's Response, arguing, among other things, that the proposed Second Amended Complaint remains subject to *Younger* abstention and the *Rooker-Feldman* doctrine, and remains in violation of Rule 8. (SER 0101-0137). On April 1, 2014, McGhee filed his Reply to State in Support of Motion for Leave to File Amended and Supplemental Complaint.  (SER 0089-0100).

On April 17, 2024, the district court filed its Order on Defendants-Appellees' motion to dismiss, severing and remanding the original Amended Complaint's Counts I-VII, dismissing the *Monell* claim at Count XI as having been conceded by McGhee, and dismissing the constitutional claims in Counts VIII, IX, X, and XII against Forsman pursuant to *Heck v. Humphrey.*   (SER 0002-0024).   Noting abstention and dismissal of all claims as the basis, the district court denied as moot all other pending motions, including McGhee's Motion for Leave to File Second Amended and Supplemental Complaint.  (SER 0024).

Judgment of Dismissal was entered on April 17, 2024.  (SER 0028).  McGhee filed his original and amended notices of appeal that same day.  (SER 1149-1150).

11

### III.   STATEMENT OF FACTS

The genesis of McGhee's Amended Complaint is the alleged strained and contentious relationship between himself and Dara Rabin; particularly the ongoing parenting issues involving their young son, S.M. (SER 1078-1080, ¶¶ 10-25). The disputes eventually developed into an August 6, 2020 report by Rabin to the Flagstaff Police Department ("FPD") that McGhee had placed a GPS tracker in a stuffed toy, and a January, 2021 report to the Coconino County Sheriff's Office ("CCSO") that McGhee had also placed a GPS tracker on Rabin's car. (SER 1080-1081, ¶¶ 26-30). The latter report was transferred from CCSO to FPD. (*Id.*).

On May 6, 2021, FPD Detective Ryan Forsman interviewed Rabin by phone about the GPS tracker placement in the stuffed toy and on Rabin's vehicle. (SER 1082-1084, ¶ 35). Regarding the GPS tracker on Rabin's vehicle, she reported finding the GPS tracker in the snow at a location where her vehicle had previously "bottomed-out." (*Id.*). Rabin reported her belief that the GPS tracker came from her vehicle. (*Id.*). After allegedly reading A.R.S. §§ 13-2921 (criminal harassment) and -2923 (stalking) to Ms. Rabin, and explaining the need to meet the elements of criminal activity, Rabin explained to Forsman her past 5 years of emotional distress due to McGhee's actions; fear for her life, *i.e.*, being killed by McGhee; McGhee walking and lurking around her property; comments McGhee had made to their son about buying firearms; McGhee's threats toward Rabin's then-current boyfriend;

McGhee's statements that he despises Rabin's existence; McGhee's refusal to undergo a psychological evaluation; McGhee telling S.M. to take the stuffed toy everywhere with him; McGhee making legal threats toward Rabin, *i.e.*, filing lawsuits if she involved the police; Rabin expressing that McGhee is known to her to be unstable; and her worry that McGhee will snap and shoot her in her sleep. (*Id.*).

McGhee alleges that on June 7, 2021, Detective Forsman applied for and was granted a search warrant through the Coconino County Superior Court in which he is alleged to have falsely stated 1) Rabin reported finding a GPS tracker "on her vehicle;" 2) it caused her fear of injury or death because of past documented incidents with McGhee; and 3) Rabin stated that she and her boyfriend had been threatened in the past by McGhee. (SER 1085, ¶¶ 40-41). McGhee's Complaint does not describe the location of the search, the evidence sought, whether the warrant was executed, or, if so, what was seized. (*Id.*).[5]

McGhee alleges he was arrested on June 8, 2021 and taken to FPD headquarters for questioning. (SER 1085, ¶¶ 43-44). McGhee alleges that Forsman

---

[5] McGhee's OB also "concede[s] [his] failure to allege that 'without the dishonesty included or omitted information [] magistrate would not have issued the warrant.'" *See,* OB, pg. 32, nt. 67. However, in the context of the district court's ruling on *Heck v. Humphrey,* this is not a small oversight in that it leaves only the issue of probable cause for the warrant as the deciding factor for the district court. *See, U.S. v. Smith,* 588 F.2d 727, 740 (9th Cir. 1978).

13

falsely reported that he, McGhee, had admitted to placing the GPS tracking device on Rabin's car. (*Id.*, ¶ 44).

On June 9, 2021, McGhee made his initial appearance in Flagstaff Justice Court in which the State requested he be held on a $50,000 cash or secured bond on the basis that he posed a "danger" to Rabin. (SER 1086, ¶¶ 45-49). The bond was imposed by the court, and despite a motion later submitted through defense counsel and opposed by the State, the Superior Court declined to lower Plaintiff's bond. (SER 1086-1091, ¶¶ 51-65). No habeas corpus was sought on the basis of excessive bail. (*Id.*).

McGhee posted bond on September 13, 2021, and on March 1, 2022, pled guilty pursuant to a plea agreement to one count of custodial interference in violation of A.R.S. § 13-1302(A)(3), a felony, committed on June 4, 2021;[6] and one count of attempted stalking in violation of A.R.S. § 13-2923, a class 1 misdemeanor, based on the August 7, 2020 GPS tracker incident involving the stuffed toy. (SER 0589; 0596; 0617-0621; SER 0829-0837; SER 1091-1092, ¶¶ 66, 67). The factual basis

---

[6] McGhee's OB suggests he was legally justified in withholding custody because *before withholding* he satisfied the defenses in A.R.S. § 13-1302(D) including the filing of an emergency petition and a good faith and reasonable belief the child would be in immediate danger if left with the other parent. *See,* OB, pg. 16, nt. 53. The fulfillment of these defenses does not appear in the record, and because a factual finding on these issues in McGhee's favor would necessarily invalidate his guilty plea and conviction, such findings necessary to support a claim are barred under *Heck.*

14

for criminal attempted stalking, to which McGhee admitted was correct, was his placement of a GPS tracking device to track the movement of the "victim, Dara Rabin, and that conduct caused the victim to suffer emotional distress or reasonably fear that her physical safety was in jeopardy." (SER 0617-0618; 0621).  On or about March 31, 2022, McGhee was sentenced and a judgment of conviction was entered by the state court.  (SER 0833-0837).

## STANDARD OF REVIEW

This Court reviews *de novo* the district court's order granting a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir. 2009). All well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008); *Warshaw v. Xoma Corp.,* 74 F.3d 955, 957 (9th Cir. 1996). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

15

This court reviews for abuse of discretion an order concerning denial of leave to amend a pleading after a responsive pleading has been filed. *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 765 (9th Cir. 1986).  While a district court's action on a motion for leave to amend should be reversed only if the action is an abuse of discretion, there is a "strong policy to permit the amending of pleadings," *Howey v. United States,* 481 F.2d 1187, 1190 (9th Cir. 1973).  Several factors govern the propriety of a motion to amend: (1) undue delay, (2) bad faith, (3) prejudice to the opponent, and (4) futility of amendment. *Loehr v. Ventura County Community College District,* 743 F.2d 1310, 1319 (9th Cir.1984).  The district court relied on the futility of the amendment, *e.g.,* the application of abstention, in light of Appellant's criminal conviction and ongoing criminal proceedings.  *See, e.g., Valerio v. Boise Cascade Corp.,* 80 F.R.D. 626, 658 (N.D.Cal.1978), *aff'd,* 645 F.2d 699 (9th Cir.) (per curiam), *cert. denied,* 454 U.S. 1126, 102 S.Ct. 976, 71 L.Ed.2d 113 (1981).

# ARGUMENT

## I. THE DISTRICT COURT CORRECTLY APPLIED *HECK v. HUMPHREY* TO DISMISS COUNTS VIII-X AND XII OF MCGHEE'S AMENDED COMPLAINT.

*Heck v. Humphrey,* 512 U.S. 477 (1994) holds that a plaintiff cannot recover in a § 1983 suit when the basis for the claim necessarily implies the invalidity of a state criminal conviction.  A § 1983 claim implies the invalidity of a previous state conviction if judgment in favor of the plaintiff would negate one of the elements of the crime of which the plaintiff was found guilty.  *Id.* at 487 n. 6.  Accordingly, if the § 1983 action's factual claims necessarily imply invalidity of the criminal conviction, the action is barred unless the state court conviction has been reversed, overturned, expunged, or otherwise invalidated.  *Id.* at 486–87; *see also Tolliver v. City of Chicago,* 820 F.3d 237, 243-44 (7th Cir. 2016).   While *Heck* dealt with § 1983 claims, this Court has applied *Heck* to § 1985 claims as well.  *See, McQuillion v. Schwarzenegger,* 369 F.3d 1091, 1097 (9th Cir. 2004); *see also, Roberts v. City of Fairbanks,* No. 4:17-cv-0034-HRH, 2018 WL 5259453 at *6 (D. Alaska October 22, 2018), *reversed and remanded on other grounds,* 947 F.3d 1191 (9th Cir. 2020).  *Heck* also applies to claims for declaratory relief.  *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).

In *Smith v. City of Hemet,* 394 F.3d 689, 695 (9th Cir. 2005) (en banc), the Ninth Circuit recognized that "'if a criminal conviction arising out of the same facts

stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." Consequently, "the relevant question is whether success in a subsequent § 1983 suit would 'necessarily imply' or 'demonstrate' the invalidity of the earlier conviction or sentence...." *Id.*, quoting *Heck,* 512 U.S. at 487.

Count VIII alleging arrest without probable cause, Count IX alleging conspiracy to falsely arrest and seek false charges against McGhee, Count X alleging malicious prosecution, and Count XII, also based on the allegation the Fourth Amendment was violated through an arrest without probable cause, are all necessarily defeated by McGhee's guilty plea which establishes probable cause for two criminal offenses arising from the investigation, prosecution, and guilty plea alleged in the Amended Complaint.

McGhee does not dispute any of the above principles. More specifically, in his OB, he does not argue that Counts VIII, IX, X, and XII are defeated by a showing of probable cause, or that a criminal conviction arising out of conduct investigated by Detective Forsman supplies the probable cause necessary to defeat Counts VIII, IX, X, and XII. *See,* OB 29-31. Rather, his OB raises only two issues related to the district court's application of *Heck.* First, he argues that "this charge had been dismissed," citing SER 1107. The OB is unclear what "this charge" means. In reality, however, he appears to be referring to SER 1106, ¶ 139, in which he alleges

that while one of his stalking charges was dismissed, he pled guilty to another attempted stalking charge arising from Forsman's investigation. *See,* OB, pgs. 30-31. Second, McGhee argues there is an "absence of a criminal judgment," rendering *Heck* inapplicable. *Id.*

As to McGhee's first argument, McGhee's amended complaint alleges his guilty pleas. (SER 1091-1092, ¶ 67; SER 1106, ¶ 139). The record below shows that McGhee pled guilty to criminal custodial interference in CR2021-00796 and criminal attempted stalking in CR2022-00203, both violations of Arizona's criminal code. (SER 0589; 0596; 0617-0621; SER 0829-0837; SER 1091-1092, ¶¶ 66, 67). He admitted that the factual basis for criminal attempted stalking was his placement of a GPS tracking device to track the movement of the "victim, Dara Rabin, and that his conduct caused the victim to suffer emotional distress or reasonably fear that her physical safety was in jeopardy." (SER 0617-0618; 0621). When he says "the charge that was dismissed," Plaintiff appears to mean the one charge that was dismissed, while ignoring his own allegations over the second stalking charge that was not dismissed, but to which he pled guilty to the lesser-included offense of "attempted stalking." "A conviction based on a voluntary plea of guilty—even to a lesser charge, as in the instant case—establishes probable cause, thereby precluding a subsequent claim of false arrest and false imprisonment." *Chillemi v. Town of Southampton*, 943 F. Supp. 2d 365, 376 (E.D.N.Y. 2013). All of McGhee's claims

19

as to Forsman are premised on the allegations that Forsman and Rabin knew Rabin's statements about placing a GPS tracker to track her, that Rabin feared for her safety, and that there was no probable cause to arrest, detain, or prosecute McGhee, were all false. Accordingly, a finding that Forsman did not have probable cause to arrest, charge, and detain McGhee would necessarily call into question the validity of McGhee's subsequent conviction which has not been alleged to be reversed, expunged, or otherwise invalidated. *See, Smithart v. Towery,* 79 F.3d 951, 952 (9th Cir. 1996) ("There is no question that *Heck* bars claims that defendants lacked probable cause to arrest him and brought charges against him."). More specifically, a finding that there was no probable cause to arrest, detain or prosecute McGhee for any form of stalking would "necessarily imply" or "demonstrate the invalidity" of McGhee's conviction for attempted stalking, for which he admits in his plea agreement and allocution, arise from the same stalking statute and are based on the same material facts that he stalked Ms. Rabin and that his conduct caused Rabin to fear for her safety. All the facts he admitted to be true through his plea, he then alleged in his amended complaint were fabricated by Forsman. *See, Cunningham v. Gates,* 312 F.3d 1148, 1153 (9th Cir. 2002) ("Cunningham cannot pursue claims under § 1983 if they are based on theories that 'necessarily imply the invalidity of his conviction[s] or sentence[s]"). This is exactly what *Heck* bars.

20

As to McGhee's second argument that there was no judgment of conviction, the record does not support that assertion. On or about March 31, 2022, McGhee was sentenced and a judgment of conviction was entered by the state court. (SER 0833-0837). There is no allegation that his conviction has been overturned, expunged, or otherwise invalidated.

Based on McGhee's plea agreement, allocution, guilty pleas, and judgment of conviction and sentencing, the district court did not err in concluding that *Heck* bars the Amended Complaint's Counts VIII, IX, X, and XII.

## II.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING LEAVE TO AMEND BASED ON THE APPLICATION OF ABSTENTION.

While leave to amend shall be given freely when justice so requires, futile attempts should not be permitted. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Garmon v. Cty. of Los Angeles*, 828 F.3d 837, 842 (9th Cir. 2016) ("A district court abuses its discretion by denying leave to amend unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities."). Here, with the exception of the §§ 1983 and 1985 claims dismissed pursuant to *Heck,* the district court found that claims attacking the judgment of conviction, or the ongoing criminal case were properly dismissed as a matter of abstention. *See, Younger v. Harris,* 401 U.S. 37 (1971); *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund,* 754 F.3d (9th Cir.2014) (setting forth requirements for

21

*Younger* abstention in civil cases). Because McGhee's new claims sought relief amounting to a collateral attack on his conviction and the ongoing criminal case process, the action was barred under *Younger,* and the district court did not abuse its discretion by dismissing without leave to amend. *See Salazar v. Brown*, 616 F. App'x 354, 355 (9th Cir. 2015); *Chappel v. Lab. Corp. of Am.,* 232 F.3d 719, 725–26 (9th Cir. 2000) (setting forth standard of review and explaining that "[a] district court acts within its discretion to deny leave to amend when amendment would be futile").

Because no amendment of the claims against Defendants-Appellees Forsman, Ring, Barker, or Coconino County could have survived dismissal under the district court's invocation of the abstention doctrine, any attempted amendment of the complaint would have been futile. Further amendment of the complaint could not cure the defect in subject matter jurisdiction for a complaint that sought only to attack an underlying criminal case, resulting in a judgment of conviction, and which remains ongoing in the state court system. Indeed, although wrapped in different theories, the *second* amended complaint proposed by McGhee included the same allegations of concerted state action as was in the first amended complaint. The district court did not abuse its discretion in denying leave to amend.

//

//

//

22

## III.   BECAUSE THE DISTRICT COURT DID NOT RELY ON QUALIFIED IMMUNITY, THERE IS NO ERROR FOR THIS COURT TO CORRECT.

In his OB, McGhee asserts that the district court *found* that "Forsman is entitled to qualified on the constitutional claims against him."   This assertion is untrue.   In reality, the district court made no ruling as to qualified immunity.  (SER 0002-0025).   The passage relied on by McGhee merely restates the arguments contained in Defendants-Appellees' motion to dismiss and, in full, reads as follows:

> *Defendants argue* that Plaintiff's claims must be dismissed on several grounds, including that Counts I-V have already been dismissed; *Younger* abstention precludes the Court from addressing Plaintiff's claims in Counts I and II because the declaratory relief Plaintiff seeks would interfere with Plaintiff's criminal proceedings, which are ongoing while plaintiff seeks post-conviction relief in the states court; these claims are also barred under *Rooker-Feldman* because federal courts cannot review final state court judgments; Plaintiff lacks standing to pursue his claims for declaratory and prospective relief for alleged past violations because he has not shown they are likely to recur; Plaintiff's § 1983 claims for his allegedly wrongful arrest, detention, and convictions are precluded under *Heck v. Humphrey*; Plaintiff fails to state a policy-based claim against the County; *and Defendant Forsman is entitled to qualified immunity on the constitutional claim against him.*

(SER 0007-0008 (emphasis added)).

The district court did not decide any aspect of McGhee's case based on qualified immunity.  The district court rendered no decision on the application or basis for qualified immunity in dismissing Appellant's amended complaint, or remanding claims to state court.  With few exceptions, an appellate court does not decide issues that the trial court did not decide. *Singleton v. Wulff*, 428 U.S. 106,

23

120–21 (1976); *Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1110 (9th Cir. 2020).

An appellate court can exercise its equitable discretion to reach an issue in the first instance. *Quinn v. Robinson*, 783 F.2d 776, 814 (9th Cir. 1986) (citing *Youakim v. Miller*, 425 U.S. 231, 234 (1976)). Including when "proper resolution is beyond any doubt," *Singleton*, 428 U.S. at 121 (citing *Turner v. City of Memphis*, 369 U.S. 350 (1962)), when "injustice might otherwise result," *id.* (quoting *Hormel v. Helvering*, 312 U.S. 552, 557 (1941)), and when an issue is purely legal, *U.S. v. Patrin*, 575 F.2d 708, 712 (9th Cir. 1978). Here, qualified immunity has been established, accepted, and extensively developed, by the U.S. Supreme Court. This is not an issue that need be decided by this Court in the first instance. For the reasons cited below, the proper resolution of the qualified immunity issues raised by McGhee is not "beyond any doubt," and because no qualified immunity decision was made regarding McGhee, the absence of resolution by this Court results in no injustice to McGhee. Finally, the question is not purely a legal one, as this Court must accept that the allegedly excised language McGhee claims to have existed in the original version of 42 U.S.C. § 1983 adopted in 1871 was truly contained therein. The district court record simply does not resolve this question of fact.

There is no underlying error this Court need correct, or address.

## IV.   THIS COURT IS BOUND BY U.S. SUPREME COURT PRECEDENT TO RECOGNIZE QUALIFIED IMMUNITY.

Public officials are entitled to qualified immunity from suit under §1983 for alleged constitutional violations unless the officer's conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The Supreme Court instructs that qualified immunity is an entitlement, provided to government officials in the exercise of their duties, not to stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *rev. on other grounds*, *Pearson v. Callahan,* 555 U.S. 223 (2009). In 2017, this Court, in exclaiming that "[w]e hear the Supreme Court loud and clear" on qualified immunity's proper application, recognized the Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality" and has done so as "necessary both because qualified immunity is important to 'society as a whole,' and because as 'an immunity from suit,' qualified immunity 'is effectively lost if a case is erroneously permitted to go to trial.'" *S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017); *see also, Mitchell v. Forsyth*, 472 U.S. 511, 512 (1985).   Since this edict in *S.B.,* the U.S. Supreme Court has steadfastly reversed improper denials of qualified immunity by this Court.  *See, Rivas-Villegas*

25

*v. Cortesluna*, 595 U.S. 1 (2021); *City of Escondido v. Emmons,* 586 U.S. 38 (2019); *Kisela v. Hughes*, 584 U.S. 100 (2018).

As McGhee acknowledges, "a precedent of th[e] [U.S. Supreme] Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375 (1982); *Brown v. Baden,* 815 F.2d 575, 576 (9th Cir. 1987). Moreover, whether an intermediate appellate court has an obligation to follow the mandates of the U.S. Supreme Court has been decided in the face of the very arguments now made by McGhee. In *Rogers v. Jarrett,* 63 F.4th 971 (5th Cir. 2023), the court considered, and then rejected, its ability to declare qualified immunity abolished based on historical underpinnings, including the possibility that the language in the Code was not the language passed by Congress in 1871. Circuit Judge Don R. Willett wrote the majority opinion, applying qualified immunity to an inmate injury case. *Id.* at 974-78. Judge Willett then wrote a concurring opinion, noting the article by Professor Alexander Reinert positing the theory that language originally included in the text of § 1983, but later allegedly excluded in the published Code, draws into question whether Congress intended common-law immunities to apply to the statute. *Id.* at 979-80. The concurring opinion correctly noted that, notwithstanding Reinert's theory, "'[a]s middle-management circuit judges,' we cannot overrule the Supreme Court. Only that Court can definitively grapple with § 1983's enactment text and decide whether

26

it means what it says – and what, if anything, that means for § 1983 immunity jurisprudence." *Id.* at 981.  On October 2, 2023, the U.S. Supreme Court denied the petition for writ of certiorari in the *Rogers* case.  144 S.Ct. 193 (2023).

McGhee erroneously couches the issue as one of *stare decisis.   Stare decisis* applies to the adherence of one court, to its own, prior decisions on the same issue taking into consideration "the quality of [the precedent's] reasoning, the workability of the rule it established, ... and reliance on the decision . . ." *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2247 (2024).  *Stare decisis* plays an important role and protects the interests of those who have taken action in reliance on a past decision.  It "reduces incentives for challenging settled precedents, saving parties and courts the expense of endless relitigation," *Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446, 455 (2015), it "contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827, (1991).   In the end, however, whether to depart from its own decisions on qualified immunity based on *stare decisis* is not for this Court; it is for the Supreme Court.

McGhee's call to judicial activism is extreme.  Despite his own authorities, he suggests this Court ignore U.S. Supreme Court precedent to reject qualified immunity, and to forge its own path.   As with *Rogers,* this Court should reject McGhee's reckless, and ill-thought suggestion.   Again, this Court need not take up

27

such a dramatic and far-reaching cause where qualified immunity played no part in the decision below.

**V.    MCGHEE'S FOUNDATIONAL ATTACK ON QUALIFIED IMMUNITY IS NOT SUPPORTED BY THE LIMITED RECORD DEVELOPED IN THIS CASE.**

McGhee goes "all-in" on the argument that the original version of 42 U.S.C. § 1983 contained language excluding immunities, and that the language – through some unknown means – did not make it into the codified version of 42 U.S.C. § 1983.   In short, rather than arguing against Forsman's entitlement to qualified immunity under existing law, McGhee opts to attack qualified immunity as a viable defense in a § 1983 action at all.   On this record, however, his argument is not backed by any evidence which he either has alleged, or has presented, and appears to be the brainchild of a law review author.   More importantly, however, the argument has been considered, and rejected, by the Fifth Circuit in *Rogers v. Jarrett,* 63 F.4th 971 (5th Cir. 2023), and the Supreme Court has not taken up the issue.[7]

The current version of § 1983 is codified in its current form as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,

---

[7] After *Rogers,* the Fifth Circuit later applied qualified immunity in *Jimmerson v. Lewis,* 94 F.4th 423 (5th Cir. 2024), with a dissenting judge making a passing reference to Professor Reinert's article.   While the basis for qualified immunity was recently challenged in *Green v. Thomas,* No. 3:23-CV-126-CWR-ASH, 2024 WL 2269133 (S.D. Miss. May 20, 2024), that decision is pending appeal at the Eleventh Circuit Court of Appeals.

subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C.A. § 1983.   No language regarding the exclusion of immunities is mentioned in the version of the Code which is currently published, and guides the Courts.   Prior versions of the statute appear in its history in 1979 and 1996, but also do not appear to contain the language suggested by McGhee.

Although McGhee claims that ancient records show the deletion, by some unknown means, of anti-immunity language in the codified version, he claims this deletion occurred in a 1874 iteration that "was authorized for publication by Congress on June 20, 1874, and was published in 1875." *See,* OB at pg. 51.  He then asserts the 1874 version, which was authorized for publication *by Congress,* rolled over into a 1925 enactment of the Code.  *See,* OB at pg. 52.  Indeed, the language from a 1878 version of the Civil Rights Act shows Sec. 1979, which provides the cause of action for constitutional violations, but has no anti-immunity language:



Return To Starting Document    Vol: [   ] Page: [        ] [Get Document]    <<prior  next>>

This image is from the Revised Statutes (1878).

TITLE XXIV.—CIVIL RIGHTS.    347

## TITLE XXIV.

### CIVIL RIGHTS.

Sec.
1977. Equal rights under the law.
1978. Rights of citizens in respect to real and personal property.
1979. Civil action for deprivation of rights.
1980. Conspiracy.
1981. Action for neglect to prevent conspiracy.
1982. District attorney, &c., to prosecute.
1983. Commissioners.

Sec.
1984. They may appoint persons to execute warrants, &c.
1985. Marshals to obey precepts, &c.
1986. Fees of district attorney, &c.
1987. Of persons appointed to execute process, &c.
1988. Speedy trial.
1989. Aid of military and naval forces.
1990. Peonage abolished.
1991. Foregoing section, how enforced.

SEC. 1977. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.  [See § 858.]

*Equal rights under the law.*
*31 May, 1870, c. 114, s. 16, v. 16, p. 144.*
*1 Mar., 1875, c. 114, s. 1, v. 18, p. 336.*

SEC. 1978. All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

*Rights of citizens in respect to real and personal property.*
*9 April, 1866, c. 31, s. 1, v. 14, p. 27.*

SEC. 1979. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.  [See §§ 563, 629.]

*Civil action for deprivation of rights.*
*20 April, 1871, c. 22, s. 1, v. 17, p. 13.*

SEC. 1980. First. If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

*Conspiracy.*
*31 July, 1861, c. 33, v. 12, p. 284.*
*20 April, 1871, c. 22, s. 2, v. 17, p. 13.*
*1 Mar., 1875, c. 114, s. 2, v. 18, p. 336.*

Second. If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

Third. If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose

The district court record does not show where the version of Section 1 of the Civil Rights Act of 1871 that appears at the OB on page 48 is from, or where or whether it can be reliably found. Without a complete record on the issue of the alleged missing statutory language including how – or if - it became missing, whether McGhee's "cut and paste" version is merely some kind of draft, or whether Congress approved the published version that has no anti-immunity language in it, has not been sufficiently developed on the record in this case to allow this Court to make a sweeping proclamation that qualified immunity should be abolished entirely. As stated above, since the district court did not dismiss McGhee's amended complaint based on qualified immunity, this Court need not go there.

### VI.    EVEN IF THE ORIGINAL VERSION OF § 1983 CONTAINED THE LANGUAGE SUGGESTED BY MCGHEE, IT DOES NOT PRECLUDE THE U.S. SUPREME COURT FROM RECOGNIZING IMMUNITIES BASED ON POLICY CONSIDERATIONS.

Assuming *arguendo* that the allegedly missing language noted by McGhee was truly intended to be in the Code, it does not necessarily follow that the U.S. Supreme Court lacks the authority to recognize qualified immunity. Indeed, as McGhee argues, the alleged missing language, would have served as a prohibition on *state and local* authorities imposing limitations on the application of the Civil Rights Act of 1871, § 1, not the U.S. Supreme Court.

31

Title 42 U.S.C. § 1983 was enacted in 1871 as part of what was known as the Ku Klux Klan Act, and was designed to provide redress for violations of federally protected rights committed by persons acting under color of law. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970). The federal claim created by § 1983 is broader than preexisting torts in that it reaches constitutional and federal statutory violations that do not correspond to any previously known tort, but it is narrower in that it applies only to tortfeasors who act under color of state law. *See, Rehberg v. Paulk,* 566 U.S. 356 (2012). The U.S. Supreme Court has noted that the statute "creates no substantive rights; it merely provides remedies for deprivation of rights established elsewhere." *Oklahoma City v. Tuttle,* 471 U.S. 808, 816 (1985). The Supreme Court reads § 1983 in harmony with general principles of tort immunities and defenses and proceeds on the assumption that common-law principles of immunity were incorporated into the judicial system, and should not be abrogated absent clear legislative intent to do so. *Filarsky v. Delia,* 566 U.S. 377 (2012). *Filarsky* contains a broad discussion of immunities that were available on or prior to 1871 applicable to judges, private attorneys acting as public prosecutors, governmental board members, and other officials – both public and private – who performed a governmental function under color of law. *Id.* at 383-90. Applying the historical examples of providing immunity to private actors performing governmental functions, the Court recognized the entitlement to immunity for an

32

attorney retained by a municipality to assist in a governmental investigation.   *Id.* at 393-94.   Qualified immunity as applied to § 1983 cases is not, however, limited to historical examples of immunities predating 1871.

The origins of qualified immunity in § 1983 cases began in 1967 with the Court's decision in *Pierson v. Ray,* 386 U.S. 547 (1967).   There, the Court recognized a "good faith" immunity for public officials.   This form of immunity, however, proved to be of limited benefit because the concept of "good faith" implicitly involves a factual determination of the public official's state of mind. Consequently, a public official could not rely on the *Pierson* form of immunity to effectively resolve disputed questions regarding the intent of the public official.

In 1982, the U.S. Supreme Court resolved this issue in the watershed case of *Harlow v. Fitzgerald,* 457 U.S. 800 (1982).[8]   In *Harlow,* the Supreme Court sought to reduce the need for jury determination in civil rights cases, and to lessen the burden on both public officials, and the courts.   The Court accomplished this by eliminating the *Pierson* subjective "good faith" standard, and replacing it with what we now call "qualified immunity."   *Id.* at 818-19.   *Harlow* declared what the Supreme Court has recognized as the law ever since that "government officials performing discretionary functions generally are shielded from liability for civil

---

[8] Curiously, McGhee side-steps *Harlow.*

33

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. Perhaps most notable, *Harlow* did not tie, or root, qualified immunity to historical notions of immunity but, rather, based qualified immunity on competing public policy considerations:

> At the same time, however, it cannot be disputed seriously that claims frequently run against the innocent as well as the guilty—at a cost not only to the defendant officials, but to society as a whole. These social costs include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office. Finally, there is the danger that fear of being sued will "dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.

*Id.* at 814.   After *Harlow,* there remains a recognition that the doctrine of qualified immunity emanates from the fact that "even where personal liability does not ultimately materialize, the mere 'specter of liability' may inhibit public officials in the discharge of their duties." *Atwater v. City of Lago Vista,* 532 U.S. 318, 368 (2001) (O'Connor, Stevens, Ginsburg, and Breyer dissenting on constitutional issue).   Just this year, the U.S. Supreme Court relied on policy considerations based on the duties of the particular official to declare the President absolutely immune from criminal prosecution and presumptively immune as to other official acts in the absence of any direct Constitutional, statutory, or common-law authority.  *See, Trump v. U.S.,* 144 S.Ct. 2312 (2024).   Not surprisingly, the public interest in a

34

President taking "bold and unhesitating action" was extracted from the same public policy-based principles cited in *Harlow*. 144 S.Ct. at 2330-31, citing *Harlow*, 457 U.S. at 745.

It is apparent that the U.S. Supreme Court, even in the face of language limiting the imposition of state-based immunities, may exercise its authority to consider and identify competing public policy interests in order to fashion a judicial immunity. That is for the U.S. Supreme Court to decide but, in the overall context of this case, is an issue this Court need not visit.

## CONCLUSION

Defendant-Appellee Detective Ryan Forsman respectfully requests this Court affirm the district court's ruling dismissing this case as to Counts VIII, IX, X, and XII. All Defendants-Appellees herein also request this Court affirm the district court's denial of leave for McGhee to file his proposed second amended complaint.

Dated: August 30, 2024

JELLISON LAW OFFICES, PLLC

*s/ James M. Jellison*
James M. Jellison, Bar No. 012763
*Attorney for Defendant-Appellee Forsman, Ring, Barker, and Coconino County*

35

## STATEMENT OF RELATED CASES

Pursuant to Civil Rule 28-2.6, Defendants-Appellees state that they are unaware of any related cases.

Dated: August 30, 2024

<div style="margin-left: 40%;">

*s/ James M. Jellison*

James M. Jellison, Bar No. 012763
Jellison Law Offices, PLLC
18801 North Thompson Peak Parkway
Suite D235
Scottsdale, Arizona 85255
*Attorney for Defendant-Appellee Forsman, Ring, Barker, and Coconino County*

</div>

36

**RULE 32 CERTIFICATE OF COMPLIANCE**

Counsel of Record hereby certifies that pursuant to Rule 32, Fed.R.Civ.App.P., the enclosed answering brief is produced using a proportionately spaced typeface, Times New Roman, 14 point, including footnotes and contains approximately 8,921 words which is less than the 14,000 words permitted by this rule. Counsel relies on the word count of the processing system used to prepare this brief.

Dated: August 30, 2024

*s/ James M. Jellison*
James M. Jellison, Bar No. 012763
Jellison Law Offices, PLLC
18801 North Thompson Peak Parkway
Suite D235
Scottsdale, Arizona 85255
*Attorney for Defendant-Appellee Forsman,*
*Ring, Barker, and Coconino County*

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that I electronically filed the foregoing Answering Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system, and electronically filed Volumes 1 - 5 of Defendants-Appellees' Supplemental Excerpts of Record.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system or that, if not registered CM/ECF users, a copy of the Answering Brief and Volumes 1 - 5 of Defendants-Appellees' Supplemental Excerpts of Record will be mailed as follows:

Dara Rabin
617 N. Pine Cliff Dr.
Flagstaff, Arizona 86001
*Defendant-Appellee*

Dated: August 30, 2024

*s/ James M. Jellison*
James M. Jellison, Bar No. 012763
Jellison Law Offices, PLLC
18801 North Thompson Peak Parkway
Suite D235
Scottsdale, Arizona 85255
*Attorney for Defendant-Appellee Forsman,*
*Ring, Barker, and Coconino County*

38